[No. 20140.   Department Two.   January 24, 1927.]

G. KILGREN *et al., Respondents,* v. SEATTLE LEASEHOLD
COMPANY, *Appellant.*[1]

[1] CUSTOM AND USAGE (6)—EVIDENCE AS TO EXISTENCE OF CUSTOM.
A custom among building contractors in the city of S. to find,
without compensation, tenants for a building which they were
to construct, even if they did not get the contract, is not estab-
lished by proof that it was the custom to accept, as their
remuneration, the obtaining of the contract.

[2] BROKERS (33)—ACTIONS FOR COMPENSATION—EVIDENCE—SUF-
FICIENCY. The employment of plaintiff to obtain tenants for a
prospective building is established by evidence that the owner
specially requested and authorized the contractor to procure
such tenants.

[3] SAME (33). The jury's award of $6,390 as reasonable com-
pensation for procuring tenants for a building is sufficiently
supported by evidence of real estate and rental men to the effect
that in their opinion it was reasonable for the services rendered,
notwithstanding appellant's claim that their testimony was
based upon the schedule of commissions adopted by the real
estate board referred to in their testimony.

Appeal from a judgment of the superior court for
King county, Ronald, J., entered April 19, 1926, upon
the verdict of a jury in favor of the plaintiffs, in an
action on contract.   Affirmed.

*Geo. W. Korte,* for appellant.

*Rummens & Griffin* and *Henry W. Parrott,* for re-
spondents.

PARKER, J.—The plaintiffs, Kilgren & Porter, co-
partners, seek recovery of compensation for services
claimed to have been rendered by them in procuring
tenants for a hotel building and garage building in
Seattle, in pursuance of their employment for that
purpose by the defendant, Seattle Leasehold Company,

[1]Reported in 252 Pac. 540.

a corporation, the owner of a fifty-year leasehold interest in the property. The issues made by the complaint and answer were as to the making of the alleged contract of employment for compensation, and as to the measure of the compensation for such employment, if made. A trial in the superior court for King county sitting with a jury resulted in verdict and judgment awarding recovery to Kilgren & Porter, from which the leasehold company has appealed to this court.

The facts, as we think the jurors were warranted in believing, and evidently did believe, them to exist may be summarized as follows: In June, 1924, appellant leasehold company, by a lease contract entered into with the owners of the fee of two lots at the northeast corner of Eighth avenue and Union street in Seattle, acquired a fifty-year leasehold interest therein, with a view of constructing thereon a building or buildings of the value of at least fifty thousand dollars; the lots being then vacant and unimproved. By the terms of this leasehold contract appellant was to commence the construction of such building or buildings within four months after the date of the leasehold contract. Failing to so commence such construction, appellant's leasehold rights in the property became subject to forfeiture at the election of the owners of the fee.

Respondents, Kilgren & Porter, during the period in question, have been engaged in the business of building construction contractors, and, as a part of their business, engaged in procuring tenants for buildings to be constructed by them. About October 1, 1924, learning that appellant leasehold company desired to construct a building or buildings upon the lots, respondent Kilgren called upon McDowall, appellant's manager, with a view of obtaining a contract for the construction of

such building or buildings as appellant might desire constructed upon the lots. McDowall then informed Kilgren that appellant desired to construct buildings upon the lots, but that it could not, in view of the condition of its resources, safely proceed with the construction without first procuring a tenant or tenants for the buildings when completed. McDowall then had a general idea as to the size and character of the desired buildings which he described to Kilgren in a very general way, probably then exhibiting to Kilgren rough, preliminary sketches of the proposed buildings. On the southerly corner lot there was proposed to be constructed a 105-room brick hotel building with stores on the street floor, and on the northerly inside lot there was proposed to be constructed a one-story concrete garage building. He then inquired of Kilgren what the probable cost of such buildings would be and was informed by Kilgren, manifestly as a mere tentative expression of opinion by him, that the buildings could be constructed at a cost of one hundred sixty-three thousand dollars, assuming the hotel building to be substantially of the quality of another hotel building, to wit, the Atlas Hotel, which respondents had constructed in Seattle, and which was then completed. McDowall then informed Kilgren that appellant would proceed with the construction of such buildings if Kilgren, meaning, of course, Kilgren and his partner, would procure a tenant or tenants for the buildings who would take them upon their completion. This Kilgren said they probably could do.

McDowall then directed and authorized Kilgren to find tenants for such buildings, informing Kilgren that he had other persons, seemingly real estate or rental agents, looking for tenants for such buildings, but so far without any results. Soon thereafter, Kilgren brought and introduced to McDowall W. G. Bovee, as

a prospective tenant for the proposed hotel building, and H. G. Hoar as a prospective tenant for the proposed garage building. Negotiations followed between these prospective tenants and McDowall, resulting in their agreeing to become tenants of appellant for the proposed buildings; the Bovee tenancy for the hotel building for a term of ten years at the rate of nineteen thousand nine hundred sixty dollars per annum, ten thousand dollars payable in advance; and the Hoar tenancy for the garage building for a term of five years at six hundred dollars per month, three thousand dollars payable in advance. Formal written lease contracts were accordingly entered into by these prospective tenants with appellant on November 19 and 20, 1924. While there were then no sufficient plans or specifications prepared to enable a building contract to be entered into and no such contract was then entered into, McDowall for appellant and Bovee and Hoar for themselves, respectively, as future tenants, deemed their understanding as to the nature and quality of the proposed buildings sufficiently definitely understood by them and McDowall for the purpose of the respective lease contracts then entered into.

Soon thereafter, McDowall, manifestly being prompted by the fact that the four months' limit for the commencement of construction of the buildings, as provided for in the lease contract by which appellant held its fifty-year leasehold interest, had expired, and its leasehold interest had become subject to forfeiture if the owners of the fee should so elect, requested respondents to go upon the lots and commence excavation and preparation of the ground for the foundations of the proposed buildings; this, manifestly, with a view of forestalling the owners of the fee from exercising their then right of forfeiture. Apparently, the foundation plans had progressed far

enough to enable this portion of the proposed construction to commence, but as yet no formal plans or specifications had been prepared by appellant's architect, who was to prepare them, rendering it possible to enter into a contract for the construction of the buildings beyond the mere preparation of the foundation ground.

Respondents proceeded with the excavation for the foundation according to McDowall's request, there being, as yet, no contract between them and appellant for the construction of the building, further than the implied contract that appellant would pay the respondents the reasonable value of such excavation work which they might perform in preparing the foundation ground. In January, 1925, appellant's architect had prepared plans and specifications for the proposed buildings, evidently satisfactory to appellant and the lessees, Bovee and Hoar. These plans and specifications were submitted to respondents, and, upon examination by them, were found to be for buildings, especially as to the proposed hotel, of a much better and more expensive character than was contemplated when Kilgren had informed McDowall that the buildings could be constructed for one hundred sixty-three thousand dollars. Respondents then bid and offered to construct the buildings, according to the completed plans and specifications, for two hundred ten thousand dollars, declining to do so for one hundred sixty-three thousand dollars. This offer was rejected by McDowall, acting for appellant. Thereafter appellant let the construction contract to another contractor.

On January 29, 1925, respondents had ceased work upon the excavation of the foundation ground, and thereafter McDowall, acting for appellant, settled with respondents, paying them an agreed reasonable value for such work, refusing, however, to compensate re-

spondents in any sum for their procuring of Bovee and Hoar as tenants for appellant. This settlement with respondents for the foundation excavation work manifestly was in no sense a settlement in any way releasing appellant from its obligation to pay respondents whatever might be due them for the procuring of those tenants. Thereafter, the building was completed by the contractor to whom the building contract was finally let by appellant, when Bovee and Hoar went into possession of the respective buildings as tenants thereof under their leases; Bovee paying to appellant the ten thousand dollars advance rent as agreed by him, and Hoar paying to appellant the three thousand dollars advance rent as agreed by him. Thus appellant received the benefit of respondents' production of Bovee and Hoar as tenants for the buildings.

[1] It is contended in behalf of appellant that the trial court erred in overruling its counsel's challenge to the sufficiency of the evidence to sustain any recovery, which challenge was made by timely motions for a directed verdict and for judgment notwithstanding the verdict. This contention, as we understand counsel, is rested principally upon the theory that it was conclusively proven in the defense that there existed a custom among building contractors in Seattle that, when a contractor produced a tenant or tenants for an owner for a proposed building to be constructed by the owner, as to which the contractor is a prospective constructor, such contractor produces such tenant or tenants without compensation, other than an opportunity to bid for the construction of the building and thereby obtain a fair chance of becoming the constructor of the building. The principal weakness of this contention lies in the fact that the evidence, as we view it, does not so conclusively show the existence of such a custom that the court can so decide as a matter of law.

McDowall, whose qualifications to testify as to the alleged custom are somewhat doubtful, testified as follows:

"As I understood the custom, it was that the various contractors would endeavor to get together the owner of certain premises and certain prospective tenants, for the purpose of getting a job to erect the building, and that their profit was in the erection of the building, and that no charge would be made for getting tenants under such circumstances."

This, it seems to us, falls far short of proving, or tending to prove, any custom as to compensation which the building contractor, the procurer of a tenant, would be entitled to when he did not become the construction contractor of the building and the owner availed himself of the services of the prospective contractor of the building in procuring tenants and the owner makes a binding lease contract with the tenant before bids for the construction of the building are even asked for, and such contractor never became the constructor of the building, under the circumstances occurring in this controversy. Gerbel, apparently an experienced building contractor of Seattle, testified as to the claimed custom, in substance the same, as follows:

"The custom is, whenever a contractor obtains a tenant for an owner for the purpose of constructing a building a certain size, that the contractor obtains the contract as his remuneration. That is the custom."

This testimony of these two witnesses is, in substance, the whole of the evidence touching the subject of custom with reference to compensation for the procuring of tenants by prospective constructors of buildings. We do not find therein any evidence of custom or usage, of any controlling force in our present inquiry; that is, as to whether or not a prospective contractor who never becomes the construction contractor

_is not to be compensated for procuring tenants, under the circumstances here shown. This testimony relates only to compensation of a contractor whose profit is "in the erection of the building," or to compensation of a contractor who "obtains the contract as his remuneration." We quote the language of the witnesses.

[2] Some further contention is made in this connection that, in any event, there never was any contract of employment of respondents by appellant for compensation to procure a tenant or tenants for the buildings. We think the evidence abundantly warrants the conclusion that there was such an employment. There was testimony to the effect that McDowall, for appellant, expressly requested and authorized respondents to find and produce a tenant or tenants for the proposed buildings. This, we think, was ample to warrant the conclusion that there was such employment, with a view of compensating respondents in some manner for the performance of such services, and since the service was performed and the benefit thereof accepted by appellant before even any bids were asked for for the construction of the building, and they did not become the constructors of the buildings, the further conclusion is warranted that respondents were to be compensated therefor in money, at all events, should they not become the constructors of the building. Plainly, the court could not decide as a matter of law that there was no employment for compensation, under the circumstances here shown.

Contention is made that the trial court erred to the prejudice of the appellant in refusing to give to the jury certain requested instructions upon the subject of the claimed custom of contractors not being entitled to any compensation for procuring tenants for buildings to be constructed, other than to obtain the

chance of becoming constructing contractors for such buildings. We think what we have already said touching the claimed evidence of custom renders it plain that there was no such proof of custom as calls for the injecting of that subject into the trial of this case. We see no prejudicial error in the refusal of the court to give such requested instructions. The instructions as given by the court were as full and fair to appellant as the evidence called for.

[3] Contention is made that the award of compensation made by the verdict and judgment was in any event excessive, and that the court should now so hold as a matter of law and, in any event, award a new trial for that reason. The prayer was for recovery of compensation in the sum of $6,390 and the award of the verdict and judgment was also in that sum. There was testimony of two experienced real estate and rental agency men of Seattle to the effect that the reasonable value of the services of procuring these tenants by respondents for appellant was considerably more in amount than this award of the verdict. The contention seems to be that this testimony, which is all the evidence there was upon the question of the value of the services, was insufficient to show such value. The argument is that the testimony of these witnesses was based upon a schedule of commissions for such service adopted by the Seattle real estate board. While the testimony of these witnesses disclosed the commission rates so adopted by the Seattle real estate board, their testimony was also directly to the effect that, in their opinion, the reasonable value of respondents' services in the procuring of these tenants was an amount computable upon the basis of the Seattle real estate board's commission rates for such service, and that such amount was the reasonable value of such services.

which, as we have noticed, was considerably larger than the award made by the verdict. Evidently, the jury concluded that respondents were entitled to recover compensation in at least the sum of $6,390 and so limited the award because respondents had not prayed for any greater award of compensation. Clearly, we think it cannot be decided as a matter of law that the award is excessive, entitling appellant to a new trial for that reason.

It is further argued in this connection that, since respondents were not engaged in the real estate or rental agency, apart from their general building contracting business, they would not be entitled to compensation for the procuring of these tenants in such an amount as regular, exclusive real estate and rental agents would be entitled to. We think it cannot be so decided as a matter of law. It was a question with the jury of reasonable compensation for the services. The testimony of the two real estate and rental agents, we concede, was all of the evidence there was touching the question of the reasonable value of the services. It is not a question of whether or not their testimony was conclusive upon that subject, as counsel for appellant seem to argue, but it was a question as to whether or not the jury, under all the circumstances, was warranted in finding the reasonable value of the services to be in a sum at least equal to that claimed by respondents. The jury may not have been bound to accept the testimony of these real estate and rental agents as conclusive, as to the value of the services, but the jury was warranted in basing its finding as to the reasonable value of the services, upon the testimony of these two witnesses and in viewing their testimony as sufficient proof of such reasonable value, at least to the extent of the award which was made by the

verdict. Clearly, we think the court cannot decide otherwise as a matter of law.

The judgment is affirmed.

TOLMAN, BRIDGES, and ASKREN, JJ., concur.